IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GORDON W. HUFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-CV-00942-MAB |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

Presently before the Court is Defendant United States of America's motion for motion for summary judgment (Doc. 22) and Plaintiff Gordon Huff's response in opposition (Doc. 23). For the reasons set forth below, Defendant's motion is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mr. Huff filed this lawsuit originally in Franklin County Circuit Court on or around August 3, 2020 (Doc 1-1). In his complaint, Mr. Huff, a Vietnam War veteran, alleges that on or around January 1, 2019, he went to the Marion Veterans Affairs Medical Center Emergency Room ("Marion VA"), where he was treated by Ms. Verna Jane Thietje, a nurse at this facility (*Id.* at p. 2). Based on their interaction at the Marion VA facility, Ms. Thietje filed a Verified Petition for Stalking against Mr. Huff. Mr. Huff contends she did this in her individual capacity and "not as an employee of the federal government" (*Id.* at p. 3). In this Verified Petition, Ms. Thietje published private information regarding Mr. Huff's patient care, military service, and military training (*Id.*). Because of this

dissemination of information, Mr. Huff filed a two count complaint against Ms. Thietje with claims for (1) intentional infliction of emotional distress and (2) a publication of private acts in violation of Illinois law (Doc. 1-1).

Then-Defendant Verna Thietje removed the present matter to the Southern District of Illinois on September 16, 2020 pursuant to the Westfall Act, 28 U.S.C. § 2679(b)(1), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) (Doc. 1, p. 2). When a federal employee is sued, the Westfall Act allows the Attorney General of the United States to certify, if appropriate, that the employee was acting within the scope of her employment and the United States will then be substituted as the party defendant. *See* 28 U.S.C. §2679(d)(1), (2). As such, on September 17, 2020, Ms. Thietje filed a motion to substitute the United States for her in this lawsuit (Doc. 4), which the Court granted (Doc. 5). Soon after, on September 24, 2020, the now substituted Defendant, United States of America ("United States"), filed a motion for summary judgment (Doc. 8). On October 29, 2020, Mr. Huff filed a motion to stay the motion for summary judgment, requesting the Court allow "necessary" discovery as to whether Ms. Thietje was acting within the scope of her employment (Doc. 14, p. 2). The United States filed their response in opposition to the motion to stay on November 23, 2020 (Doc. 18).

On June 21, 2021, the Court granted Mr. Huff's motion to stay, allowing the parties to engage in limited written discovery regarding the scope of employment issue (Doc. 19). The Court also denied the United States' motion for summary judgment without prejudice and with leave to refile once the parties completed limited discovery. *Id*. The

United States has now filed a new motion for summary judgment (Doc. 22), and Mr. Huff has filed a response in opposition (Doc. 23).

In this second motion for summary judgment, the United States has included a considerable amount of evidence to support its position. This information was gathered both before the United States filed its first motion and during the limited discovery the parties engaged in pursuant to the Court's June 21, 2021 Order (Doc. 19). The Court notes that in his response, Mr. Huff did not respond or otherwise object to the additional information included in the United States' motion for summary judgment. As a result, pursuant to Federal Rule of Civil Procedure 56(e), the Court deems these facts undisputed for the purposes of this Order. The following information is included in the United States' motion for summary judgment and supporting exhibits.

Mr. Huff is a decorated Vietnam War veteran who has been treated at the Marion VA for decades (Doc. 1-1, p. 2). He went to the Marion VA on January 1, 2019 and was treated by Ms. Thietje (*Id.*). During this ER visit, Mr. Huff secretly recorded his interactions with Ms. Thietje (Doc. 22-1, p. 3). The next day, Mr. Huff returned to the Marion VA with pictures of Ms. Thietje and another employee that he printed from the video. He showed another employee these photos and asked for the names of the people in the pictures. An ER manager overheard Mr. Huff's request and intervened (*Id.*).

Mr. Huff returned to the Marion VA on January 8, 2019 and informed an employee that he had sent the video to a news organization so that the Marion VA would be exposed for his poor treatment (*Id.*). This interaction with Mr. Huff prompted Marion VA officials to interview Ms. Thietje and the other VA employee in the video (*Id.*). On

February 1, 2019, Mr. Huff returned to the Marion VA, asking if Ms. Thietje and the other employee in the video were working so he could say hello (*Id.* at pp. 3-4). He was not there for medical care. Mr. Huff again returned to the Marion VA in March 2019, but for care this time, and addressed Ms. Thietje by name while passing her in the hallway (*Id.* at p. 4).

On April 6, 2019, Ms. Thietje received a letter dated April 3, 2019 at her home address written by Mr. Huff's attorney and close friend (Doc. 22-2). A copy of the letter was also sent to the Marion VA clinic. In the letter, Mr. Huff's attorney described him as a "decorated Vietnam veteran" and mentioned that he was disabled, suffering from post-traumatic stress disorder ("PTSD"). The letter summarizes Mr. Huff and Ms. Thietje's interactions during his January 1, 2019 visit. From Mr. Huff's perspective, he was at the ER that day to get three Lorazepam tablets for his PTSD to hold him over until he would be allowed to get a refill. This request, in and of itself, was not a request for a refill of this prescription. Mr. Huff's attorney outlines that Ms. Thietje refused to give him this medication and refused to allow him to see the ER doctor. According to Mr. Huff, Ms. Thietje's refusal to refer him to the doctor went against the standards for proper nursing care and was illegal (*Id.*).

The letter instructs Ms. Thietje to have no further contact with Mr. Huff in any capacity (*Id.* at p. 5). Specifically, the letter reads, "Should he come into the ER again you will need to find another nurse to assist him. You are not to give him any medications or injections" (*Id.*). This is the result of the "deplorable" treatment Ms. Theitje gave Mr. Huff, which included telling him to "shut up" and other forms of verbal, emotional, and mental

abuse during the January 1, 2019 visit (*Id.* at p. 2). Mr. Huff's attorney sent a copy of this letter to various federal officials, including U.S. Senator Dick Durbin (*Id.* at p. 3).

Also on April 6, 2019, Ms. Thietje reported Mr. Huff's actions and the recently received letter to the Marion VA police, who told her to contact local law enforcement for more guidance (Doc. 22-4, p. 2). Donna House, Deputy Associate Director of Patient Care Services, submitted a declaration in support of the United States' motion for summary judgment. Ms. House describes that Ms. Thietje did as she was told by the Marion VA police and contacted the Jackson County Sheriff's Office. The Sheriff's Office advised her to contact the Victim Advocate, who explained to her that she could file a no contact order/petition for stalking based on her interactions with Mr. Huff at the VA (Doc. 22-1, p. 4).

Marion VA directives and internal policies inform employees, like Ms. Thietje, to report disruptive patient behavior whether or not it occurs on the Marion VA campus. One such notice, titled "Patient Record Flags: Disruptive Patient Behavior," indicates that employees should report all incidents of disruptive, threatening, and violent behavior, which this notice defines, in part, as, "verbal or written threats of harm against individuals, patients, staff, or VA property…repeated nuisance, disruptive, or larcenous behavior" (Doc. 22-23, p. 2). The flyer repeatedly emphasizes that employees should report this type of behavior, finally, in bold letters, indicating "If you don't report it, it didn't happen" (*Id.*). The notice acknowledges that disruptive patient behavior can occur at any location, even off of the main Marion VA campus, and instructs individuals to call

911 for any incidents that occur "not on-station at Marion main campus" (*Id.*). The notice indicates employees should also involve the Marion VA police department (*Id.*).

The United States also points to two other policies related to workplace violence and disruptive behavior. The VA has an "OHI CAP Review Guide" and "Workplace Violence Prevention Program." The OHI CAP Review Guide, issued in October 2016, details that it was put in place to determine the extent to which VA facilities complied with the requirements set out to manage disruptive or violent behavior (Doc. 22-24). These guidelines describe the parties that are responsible for safety on VA campuses, as well as how individuals should report disruptive behavior.

On April 8, 2019, Ms. Thietje received another letter from Mr. Huff's attorney's office at both her home and at the Marion VA. This letter included the missing exhibits referenced in the April 3, 2019 letter, which included a photo of Ms. Theitje taken by Mr. Huff and a copy of a medical record note (Doc. 22-3, pp. 3-8). Ms. Thietje forwarded this letter to various people at the VA in an email dated April 9, 2019, in which she asked the message to be forwarded to Jeffrey Thompson, Supervisor of Risk Management at the Department of Veterans Affairs, to determine a course of action (*Id.* at p. 2).

On or around April 11, 2019, Ms. Thietje filed her application for the verified petition for stalking/no contact order (Doc. 22-5). In this application, Ms. Thietje asked that Mr. Huff only visit the Marion VA when it was necessary for medical attention (Doc. 22-5, p. 7). The United States notes, and Mr. Huff agrees, that Ms. Thietje ultimately withdrew the application on the day of the scheduled hearing (Docs. 22-1, p. 5; 23-1, p. 1).

Around this time, on April 9, 2019, counsel for the Marion VA sent Mr. Huff's counsel a letter in response to Mr. Huff's April 3, 2019 letter (Doc. 22-21). In this letter, Michael L. Ramsey, Deputy Chief Counsel of the Office of General Counsel—Midwest District of the U.S. Department of Veterans Affairs, confirmed receipt of the April 3rd letter to Ms. Thietje and explained that employees of the VA are immune from common law torts committed within the scope of their employment (*Id.* at p. 2). He explains the process by which he will substitute the United States as the defendant in place of the VA employee under the Federal Tort Claims Act, should a lawsuit be filed. *Id.* He concludes the letter by explaining that future correspondence on this issue should be directed to the Marion VA Director's Office instead of to Ms. Thietje. *Id.*

Even after this letter, it appears Mr. Huff continued to contact Ms. Thietje and other officials about this issue. On April 15, 2019, Ms. House received four separate emails from Mr. Huff, in which he used "unsavory" language, including expletives (Doc. 22-1, p. 5). Mr. Huff complains that Ms. Thietje must be fired because she is abusive and must be controlled because "she's out of her mind" (*Id.*). He concludes in one of the emails that "[t]his thing was a 2 alarm emergency now it's a 10 alarm" (Doc. 22-6, p. 3).

Also on April 15, 2019, Mr. Huff sent a fifth email to Ms. House, attaching an ABC News article about a nurse who lost her license for stabbing an autistic teenager with needles when he failed to comply with her instructions (Doc. 22-1, p. 6). Mr. Huff wrote, "I can see Verna J. Ratchett doing this. I hear she may be going to lose her license as well" (Doc. 22-8).

On June 12, 2019, Mr. Jeffrey Thompson sent an email to Marion VA officials, including Ms. House, detailing that Ms. Thietje had informed him that Mr. Huff had filed a complaint against her with the Illinois Department of Professional Regulations ("IDPR") (Doc. 22-5, p. 10). In his email, Mr. Thompson indicates that the Marion VA attorney has been contacted about this issue and he has been "briefed on the case from the beginning" (*Id.*).

On August 20, 2019, Ms. House received an email from Mr. Huff expressing concerns about the amount of money spent in legal fees related to Ms. Thietje's application for no contact order (Doc. 22-1, p. 6). He said, "If she doesn't pay me I intend to sue her for at least 250,000 for elder abuse and slander. She will either pay me or she'll have to go bankrupt that'll be all right with me. Doesn't anything she did piss you off?" (Doc. 22-9).[1]

On December 5, 2019, Ms. Thietje received another letter from Mr. Huff's attorney (Docs. 22-1, p. 6; 22-10). Mr. Huff's attorney starts the letter with, "This is your one opportunity to do the right thing and avoid a lawsuit. It is your only opportunity to do so" (Doc. 22-10, p. 2). He explains she has until the close of business on December 19, 2019 to send Mr. Huff $2,500.00. *Id.* Her refusal to do so could result in a lawsuit where he will seek a money judgment "in excess of $200,000.00" (*Id.*). Mr. Huff's attorney explains that

---

[1] The United States includes additional email correspondence, and supporting exhibits, between Ms. House and Mr. Huff, occurring throughout January 2020 regarding staff members other than Ms. Thietje. Although the United States details how Mr. Huff continued to complain of his care at the Marion VA and videotaped additional medical professionals, these factual details are not necessary for the undersigned to reach a decision in the present matter (*See* Docs. 22, pp. 11-12; 22-1, pp. 6-7; 22-11; 22-12; 22-13).

because she filed the action against Mr. Huff in her individual name, she has "no legal protection from the VA." *Id.*

On February 5, 2020, Ms. House received another email from Mr. Huff in which he describes issues with his care during a visit to the Marion VA emergency room (Doc. 22-1, p. 7). He claims a male nurse was abusive to him. In this email, Mr. Huff also states, "If you can convince this nurse it is in her best interest to send me a check for $2500 to my attorneys[sic] office if she doesn't public shaming is what I will do. She's got one week. If she filed another fraudulent order of protection against me I will see that she gets jail time for fraud" (Doc. 22-14, p. 5). Ms. House believes this threat is directed at Ms. Thietje (Doc. 22-1, p. 7).

On November 18, 2020, Mr. Huff sent another VA employee a letter, in which he states the following:

> In our last meeting I told you this nurse was abusive since then she filed a fraudulent order for protection against me what she didn't know was that I had a video recording of everything I said and everything she said now she knows its too late her vengeance directed towards me is now in court and if she doesn't pay me and I will win I will put her in involuntary bankruptcy…If the nurse doesn't pay me my money I'm taking out a full page ad in the southern I'm going to post her photo where she lives where she works and what she did to me there's nothing she can do its my first Amendment right to warn other veterans of this abusive nurse and if she wants to sue me please sue me I'm judgement proof. I have a great attorney a friend from my teenage years.

(Doc. 22-22).

On August 24, 2020, Ms. Thietje received a summons from the Circuit Court of Franklin County, Illinois at her home (Doc. 22-1, p. 8). She forwarded all materials to the

VA's legal counsel. *Id.* At some point, Mr. Huff also filed a complaint against Ms. Thietje with the Illinois Department of Professional Regulation (*Id.* at p. 5).

## LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). If the moving party bears the burden of persuasion on an issue at trial, it must "lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. National Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *accord Felix v. Wisconsin Dep't of Transp.*, 828 F.3d 560, 570 (7th Cir. 2016). Where the moving party fails to meet that strict burden, the Court cannot enter summary judgment for that party even if the opposing party fails to present relevant evidence in response. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a motion for summary judgment, the nonmoving party may not

simply rest upon the allegations contained in the pleadings, but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322–26; *Anderson*, 477 U.S. at 256–57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact only exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## DISCUSSION

The United States' motion for summary judgment presents two main questions for the Court to decide. The first is whether Ms. Thietje was acting within the scope of her employment when she applied for a no-contact order against Mr. Huff. If so, then the second issue the Court must decide is whether Mr. Huff exhausted administrative remedies before filing the suit. If the Court finds that Ms. Thietje was acting within the scope of her employment and Mr. Huff did not exhaust administrative remedies prior to filing suit, summary judgment would be appropriate. *See Houston v. United States*, 638 F. App'x 508, 512 (7th Cir. 2016) (citing *See* 28 U.S.C. § 2675(a)); *McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786–88 (7th Cir.2014) (detailing that once it was determined that an individual acted within the scope of their employment, then the United States was the proper defendant under the FTCA and exhaustion applies. Dismissal of the claims for failure to exhaust was appropriate once scope of employment was settled).

Untraditionally, the Court will start with the second issue, as the parties agree that Mr. Huff has failed to exhaust administrative remedies prior to filing this lawsuit. *See* Docs. 23, p. 1; 22, pp. 3-4. As previously mentioned, the FTCA waives sovereign immunity of the United States in certain torts suits. *Levin v. United States*, 133 S. Ct. 1224, 1228 (2013) (citation and internal quotation marks omitted). Administrative exhaustion is a requirement of Section 2675(a) of the FTCA and must be completed before a lawsuit can be filed. *Ortega v. United States,* No. 16 C 5475, 2016 WL 8732321, at *3 (N.D. Ill. Oct. 21, 2016).[2] The Seventh Circuit takes a nuanced approach to exhaustion, making it clear that exhaustion is a "condition precedent to the plaintiff's ability to prevail." *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786–87 (7th Cir. 2014) (internal citations omitted). What this means, practically speaking, is that a plaintiff must exhaust prior to suit, but if that plaintiff does not follow the exhaustion requirements with "every jot and tittle," it may not be fatal to their federal case *so long as* the proper agency had the opportunity to settle the claim for money damages before the point of suit. *Id.* at 787. Here, Mr. Huff does not attempt to argue that he exhausted administrative remedies to the letter of the law or even constructively exhausted administrative remedies; rather, he openly admits that he failed to exhaust administrative remedies (Doc. 23, p. 1). As such, the only remaining

---

[2] Section 2675(a) of the FTCA states the following: "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." *See* 28 U.S.C. § 2675(a).

question before the Court is whether Ms. Thietje was acting within the scope of her employment. If Ms. Theitje was, in fact, acting within the scope of her employment, then exhaustion is a condition precedent. Since Mr. Huff did not exhaust, resolving the issue of scope of employment is necessary to determine whether the United States' motion for summary judgment should be granted.

"The United States as sovereign is immune from suit unless it has consented to be sued." *Lipsey v. United States*, 879 F.3d 249, 253 (7th Cir. 2018). The Federal Tort Claims Act provides a limited waiver of the United States' sovereign immunity and allows suits for money damages against the United States for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of [their] office or employment." *Id.* (citing 28 U.S.C. § 1346(b)(1)). A government employee is defined in relevant part by the FTCA as "officers or employees of any federal agency, . . . and persons acting on behalf of a federal agency in an official capacity . . . ." 28 U.S.C. § 2671.[3]

The parties agree that whether Ms. Thietje was acting within the scope of her employment when she filed the application for the no-contact order is a question of Illinois law. *See Taboas v. Mlynczak*, 149 F.3d 576, 582 (7th Cir.1998) (citing *Snodgrass*, 957

---

[3] The full definition reads: "'Employee of the government' includes (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation, and (2) any officer or employee of a Federal public defender organization, except when such officer or employee performs professional services in the course of providing representation under section 3006A of title 18." 28 U.S.C. § 2671.

F. 2d 482, 484 (7th Cir. 1992)). Once the government has certified that one of its employees acted within the scope of employment, the plaintiff "must point to facts suggesting that, based on this scope-of-employment formula, the certification is wrong." *Houston.*, 639 Fed.Appx. at 512, citing *Taboas*, 149 F.3d at 582.[4] The Court wishes to make clear that it is the *plaintiff* who bears the burden of demonstrating that the scope certification was in error. *See id.*[5] Under Illinois law, "[n]o precise definition has been accorded the term 'scope of employment,' but broad criteria have been enunciated." *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (1989) (quotation and citation omitted). Under Illinois law, an employee's action falls within the scope of employment if:

>   (a) it is of the kind he is employed to perform;
>   (b) it occurs substantially within the authorized time and space limits;
>   (c) it is actuated, at least in part, by a purpose to serve the master.

*Gabel v. United States*, No. 98 C 4246, 1999 WL 33880, at *2 (N.D. Ill. Jan. 19, 1999) (citing *Taboas,* 149 F.3d at 582 (citing *Pyne,* 543 N.E.2d at 1308))).

---

[4] Generally speaking, when a party challenges certification (regardless of the type of motion used), courts in this district have allowed limited discovery on the scope-of-employment issue. *See e.g., Casey v. Guthrie*, No. 09-cv-951-JPG, 2010 WL 455497, at *1 (S.D.Ill. Feb. 4, 2010). *See also Alexander v. Mount Sinai Hosp. Med. Ctr. Of Chicago*, 165 F.Supp.2d 768, 772 (N.D.Ill. 2007). That is exactly what the undersigned ordered with the July 21, 2021 Order instructing the parties to conduct limited discovery on the scope-of-employment issue. *See* Doc. 19.

[5] The Court previously granted Ms. Thietje's motion to substitute the United States on September 17, 2020 (Docs. 4, 5). Certification, removal, and substitution under the Westfall Act "work together to assure that, when scope of employment is in controversy…[it] may be resolved in federal court." *Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 430 (1995). Therefore, Westfall certification is subject to judicial review. *Casey v. Guthrie,* 2010 WL 455497, citing to *Gutierrez,* 515 U.S. at 434 ("[T]he Attorney General's certification that a federal employee was acting within the scope of his employment—a certification the executive official…has a compelling interest to grant—does not conclusively establish as correct the substitution of the United States as defendant in place of the employee") (internal citations omitted).

The United States argues that the record shows Ms. Thietje was acting within the scope of her employment based on the previously noted test; therefore, summary judgment must be granted. The United States argues that this is clear even from the complaint and without the additional discovery ordered by the Court. For example, the United States points to the provision of the complaint in which Mr. Huff argues that "based on that interaction [between Ms. Thietje and Mr. Huff at the VA]," Ms. Theitje filed a verified petition for stalking (Doc. 22, p. 5, citing to Doc. 1-1, ¶5). Additionally, Mr. Huff pleads that Ms. Theitje "used her position" to disseminate "private medical information." *Id.* The United States argues that the way Mr. Huff described Ms. Thietje's actions shows she was acting within the scope of her employment on the face of the complaint alone, and this argument is only bolstered by the additional discovery the parties engaged in at the direction of the Court.

Once the parties conducted limited discovery, the United States argues that the evidence *clearly* shows that Ms. Thietje was acting within the scope of her employment. Ms. Thietje and Mr. Huff only met and interacted with one another as a result of her employment with the Marion VA (Docs. 1-1, p. 2; 22-1, pp. 3-4). Additionally, the Marion VA has policies that tell employees to report any behavior, by other employees or patients, that are violent or could pose a safety risk, both on the Marion VA's campus and off campus (Doc. 22-23, p. 2). Once Mr. Huff returned to the Marion VA a few times, and Ms. Thietje received a letter from his attorney at her home, the VA attorney became involved, as did Ms. Thietje's superiors and risk management employees (Docs. 22-21; 22-5, p. 10). In fact, the VA attorney instructed Mr. Huff's attorney to no longer contact

Ms. Thietje and all communication about this matter should be directed towards the Marion VA Director's Office (Doc. 22-21). When Ms. Thietje reported these issues with Mr. Huff to her superiors, she was instructed to contact the Marion VA police who told her to contact local law enforcement (Doc. 22-4, p. 2). This is exactly what she did. Since Ms. Thietje was instructed to contact local law enforcement by her superiors at the VA, the United States argues she was engaged in behavior "actuated, at least in part, by a purpose to serve the master" when she filed the application for the no contact order. *Taboas*, 149 F.3d at 582. In support, the United States submits approximately 25 exhibits, as well as supports its arguments with legal precedent, to explain that there are no issues of fact and summary judgment is appropriate. The United States explains that courts within this Circuit have routinely held that when determining whether an employee acted within the scope of employment, the trier of fact will look to "whether the action furthered the purpose of employment and whether the employee encountered the plaintiff only as a result of conducting official business." *Chambers v. Cross*, NO. 17-cv-996-JPG-RJD, 2018 WL 5904461, at *4 (S.D.Ill. Sept. 4, 2018) (citing *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1093 (7th Cir. 1990); *see also Mann v. Harvey*, 999 F.Supp.2d 1087, 1092 (N.D. Ill., Nov. 26, 2013)).

The Court agrees with the United States. The record as a whole shows that Mr. Huff and Ms. Thietje met and interacted only as a result Mr. Huff's visit to the VA seeking medical care. Indeed, Ms. Thietje was the nurse assigned by the VA to provide that care to him. While, strictly speaking, Ms. Thietje was a nurse and was not hired to file no-contact orders, she was instructed to contact local law enforcement by her superiors and

the VA police. Additionally, the Marion VA has policies instructing employees to report this type of behavior (Doc. 22-23). The VA attorney was involved "from the beginning" and was in communication with Ms. Theitje and her superiors (Doc. 22-5, p. 10). The record indicates that Ms. Thietje's actions furthered the purposes of her employment and were authorized by her employer. *See Ramzan v. United States*, 438 F. Supp. 3d 871, 877 (N.D. Ill. 2020), appeal dismissed, No. 20-1368, 2021 WL 3891003 (7th Cir. July 28, 2021) (citing *Duffy v. United States*, 966 F.2d 307, 314 (7th Cir. 1992)) ("Conversely, it is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.").

Mr. Huff argues in his response to the United States' motion for summary judgment that there are still questions of fact as to whether Ms. Thietje was acting within the scope of her employment (Doc. 23, pp. 4-6). Mr. Huff says the only way to truly determine whether Ms. Thietje was acting within the scope of her employment is to allow him an opportunity to conduct full discovery, including depositions, and then to schedule an evidentiary hearing (*Id.* at p. 4). While Mr. Huff contends there are still questions of fact to resolve, he fails to cite to any legal authority or point to specific evidence in the record to support his argument.

It is true there are certain situations and circumstances in which a court may be required to hold an evidentiary hearing in order to ascertain whether the Attorney General's scope of employment certification was proper. *Hasbun v. United States*, No. 10 C 2000, 2010 WL 5150986, at *2 (N.D. Ill. Dec. 10, 2010) (internal citations omitted) (noting

that the district court held an evidentiary hearing "to determine the accuracy of the Attorney General's scope-of-employment certification"). However, "the party challenging the certification must provide 'something more than conclusory abstractions' in order to obtain such a hearing." *Id.* While Mr. Huff claims there are questions of fact that require further discovery, he fails to support his argument with evidence in the record. This lack of support is fatal to Mr. Huff's position. For example, Mr. Huff argues that a reasonable fact finder could conclude that Ms. Theitje sought her no contact order to "further abuse" Mr. Huff and not as part of her employment and/or to serve the VA (Doc. 23, p. 5). But Mr. Huff does not cite to any part of the record that supports this possibility. Rather, he simply states, "[t]he clear inference from the evidence in the record is Ms. Theitje acted in her own interest in wrongfully seeking a no contact order" (*Id.*). Without more, Mr. Huff has not supported his argument that an evidentiary hearing and more discovery is necessary.

Mr. Huff then argues that even if he is not afforded an evidentiary hearing, the evidence still weighs in his favor and summary judgment should be denied. First, Mr. Huff argues that it is clear Ms. Thietje was not acting within the scope of her employment because her actions were not of the kind she was employed to perform and her actions did not occur within the authorized time and space limits of her job. *Taboas,* 149 F.3d at 582. Mr. Huff argues that "filing an order of protection is not the type of conduct Ms. Thietje was hired to perform. She is a nurse…not a lawyer, paralegal, law clerk, or any other type of legal professional" (Doc. 23, p. 4). Additionally, the courthouse Ms. Thietje went to in order to apply for the protective order was in the county in which she lives, as

opposed to the county where the Marion VA is located. *Id.* The third aspect of the scope of employment test is not as straightforward, according to Mr. Huff, and questions of fact remain because "a reasonable fact finder could conclude that Ms. Theitje sought a no contact order to further abuse Plaintiff, not to serve the VA" (Doc. 23, p. 5). In other words, Mr. Huff argues the Court should deny summary judgment because questions of fact remain as to whether Ms. Thietje's actions were actuated to serve the master. *Taboas,* 149 F.3d at 582.

Even if the Court were to believe Mr. Huff's arguments had some merit, he has failed to support any of his arguments with references to the record as a whole or by citing to precedent to support his position. All in all, Mr. Huff's response to the motion for summary judgment is a mere six pages in length in which he relies on mainly conclusory arguments. For example, he argues that the United States' exhibits are "wrought with hearsay and irrelevant information," but he fails to contest the evidence in specific ways. Mr. Huff does not point to specific exhibits that are examples of hearsay or explain why they should be excluded. While the Court agrees that the United States has included some information that is irrelevant, simply stating that is insufficient to counter their arguments to survive summary judgment.

In responding to the motion, the nonmovant cannot rest on the pleadings or mere allegations to overcome a summary judgment motion; instead, it must submit "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citing *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)). "Factual disputes are

genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). Mr. Huff has not presented admissible evidence showing there is a genuine dispute of material fact. Based on the evidence in the record, Ms. Thietje was acting within the scope of her employment when she followed the direction of her superiors, consulted with local law enforcement, and ultimately filed the application for the no-contact order. Therefore, certification of the United States as Defendant is proper. Mr. Huff admits he did not exhaust administrative remedies prior to filing suit. Therefore, summary judgment must be granted.

## CONCLUSION

For the aforementioned reasons, the United States' motion for summary judgment (Doc. 22) is **GRANTED**. The United States is **DISMISSED** with prejudice as a Defendant in this matter and this case is **DISMISSED** with prejudice. The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

IT IS SO ORDERED.

DATED: March 1, 2022

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
